IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **OSCAR MANZANO,**<br><br>   **Plaintiff,**<br><br> vs.<br><br>**ENHANCE IT, LLC, and VIKRAM G. THADANI,**<br><br>   **Defendants.** | Civil Action No. _____ |

## COMPLAINT

Plaintiff Oscar Manzano, by and through the undersigned counsel, herein asserts claims against Defendant Enhance IT, LLC, under the Fair Labor Standards Act ("FLSA") and Georgia state law, showing the Court as follows:

**INTRODUCTION**

1. In this action, Plaintiff Manzano seeks to recover unpaid overtime wages and liquidated damages arising under the Fair Labor Standards Act (29 U.S.C. § 201 *et seq*.) from his employer Enhance IT, LLC. Plaintiff additionally seeks a judgment from this Court declaring that his contract of employment with Enhance IT is invalid and unenforceable because (1) the contract requires Plaintiff to participate in an ongoing fraud by Defendants

against their customers, (2) its tuition repayment provision violates the minimum wage and overtime requirements of the FLSA, and (3) its tuition repayment provision is an illegal penalty.

**JURISDICTION AND VENUE**

2. The jurisdiction of this Court is proper pursuant to Article III, § 2 of the United States Constitution, 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, as this case arises under the FLSA, a federal statute that affects interstate commerce.

3. The Court also has jurisdiction to hear Plaintiff's request for declaratory relief pursuant to the Declaratory Judgment Act. 28 U.S.C. §§2201–2202.

4. Defendant Enhance IT, LLC (hereinafter "Enhance IT"), is a domestic limited liability company.

5. Enhance IT, may be served with process via service on its registered agent for service, Robert Adamson, at 1785 The Exchange, Atlanta, GA, 30339.

6. This Court has personal jurisdiction over Enhance IT.

7. Defendant Vikram G. Thadani (hereinafter "Thadani") is a natural person and may be served at his residence in Fulton County, Georgia, or wherever he may be found.

8. This Court has personal jurisdiction over Thadani.

9. Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Enhance IT regularly conducts business in this judicial district, a substantial portion of the events giving rise to the claims herein arose in this judicial district, and Defendants reside in this judicial district.

**EMPLOYMENT RELATIONSHIP**

10. Defendant Enhance IT is in the business of providing professional consulting, systems analysis, development, integration, and support services for other businesses (i.e., "clients").

11. Enhance IT hired Manzano as an iOS Developer on June 28, 2022.

12. Enhance IT required Manzano to go through a nine-week period of iOS development training in Atlanta, Georgia during which time he was compensated at the rate of $7.25 per hour for exactly 40 hours per week.

13. During his training, Manzano typically worked 8 hours per day at the offices of Enhance IT, and regularly performed substantial and mandatory additional work at home on nights and weekends, for total hours worked far in excess of 40 per week.

14. After his training was completed, Enhance IT placed Manzano on "on bench," meaning that he was required to participate in the company's efforts to place him on another project.

15. During his time "on bench," Enhance IT compensated Manzano at the rate of $7.25 per hour.

16. Manzano worked for Defendants from June 28, 2022, through November 28, 2022.

17. Throughout his employment, Manzano was an "employee" of Enhance IT within the meaning of 29 U.S.C. § 203(e)(1) as a matter of economic reality.

18. At all relevant times, Defendant Vikram G. Thadani was a member of Enhance IT, LLC.

19. At all relevant times, Thadani was involved in the day-to-day operation of Enhance IT.

20. At all relevant times, Thadani exercised operational control of Enhance IT, LLC.

21. At all relevant times, Thadani exercised authority and supervision over the terms of Plaintiff's compensation.

22. At all relevant times, Thadani was an "employer" of Plaintiff within the meaning of 29 U.S.C. §203(d).

**ENTERPRISE COVERAGE UNDER THE FLSA**

23. During 2021, Enhance IT had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

24. During 2021, Enhance IT had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person," within the meaning of 29 U.S.C. § 203(s)(1)(A).

25. During 2021, Enhance IT had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

26. During 2021, Enhance IT was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the 29 U.S.C. § 203(s)(1).

27. During 2022, Enhance IT had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

28. During 2022, Enhance IT had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

29. During 2022, Enhance IT had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the

retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

30. During 2022, Enhance IT was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the 29 U.S.C. § 203(s)(1).

**GENERAL FACTUAL BACKGROUND**

31. At the outset of his employment by Enhance IT, Manzano was required to sign a contract styled as a "Tuition Forgiveness Agreement," which was prepared by Enhance IT.

32. The Tuition Forgiveness Agreement's terms included, *inter alia*, that Manzano would become liable to Enhance IT in the amount of $34,650.00 plus interest, if he resigned his employment within 24 months for any reason, or if Enhance IT terminated his employment "for cause" within the same time period.

33. This is substantially the same agreement that Enhance IT and related, Thadani-owned entities have required their employees to enter into for years.

34. On information and belief, Enhance IT and Thadani's other predecessor and related companies—e.g., Brighter Brain and Mobile Apps Enterprises—have required employees to sign similar agreements for more than a decade.

35. On information and belief, Enhance IT and Thadani have sued dozens of their employees for violation of the Tuition Forgiveness Agreement.

36. Such lawsuits are typically filed by a third-party (e.g., Collection Recovery Solutions International, LLC), to whom the Company formally assigns its interest in the Tuition Forgiveness Agreements.

37. On information and belief, Defendants have settled these claims with dozens if not hundreds of employees over the same time period, typically either (1) obtaining a default judgment against the employee, or (2) settling the case for a more than 90% discount on the face value of the purported liability, which is—conveniently—less than the cost of litigation of the claim.

38. The Tuition Forgiveness Agreement is illegal and unenforceable.

39. On information and belief, Defendants have at all relevant times known that the Forgiveness Agreement is illegal and unenforceable.

40. On information and belief, Defendants have at all relevant times extorted payment out of as many former employees of Enhance IT and its predecessor entities as possible by threatening them with massive demands and giving them mere hours to agree to pay before they threaten to file suit.

41. The $34,650.00 in "expenses" described in the Tuition Forgiveness Agreement were not based on the actual expenses incurred by Enhance IT in training Manzano, nor were they a reasonable estimation of any harm that Enhance IT would suffer in the event of Manzano's resignation or for-cause termination prior to the expiration of the 24-month term.

42. The "expenses" that Manzano agreed to repay—and that Defendants and their predecessor entities have required employees to agree to repay for many years—are entirely arbitrary and divorced from the actual costs incurred by Enhance IT in training Mr. Manzano.

43. The Tuition Forgiveness Agreement acts as nothing more than an *in terrorem* clause and a penalty to discourage breach.

44. Prior to Manzano's placement working for a client of Enhance IT, Defendant required Manzano to provide a copy of his current résumé.

45. Enhance IT thereafter falsified Manzano's résumé, adding years of false employment history.

46. Enhance IT also created a fake LinkedIn profile for Plaintiff reflecting the same false work history.

47. On information and belief, Enhance IT and its predecessor entities—all owned and/or controlled by Defendant Thadani—have created dozens and

possibly hundreds of fake résumés and profiles for their employees over a period of more than 10 years.

48. On information and belief, Enhance IT and its predecessor entities—all owned and/or controlled by Defendant Thadani—have defrauded their clients by purporting to place long-experienced programmers in their companies but in reality providing merely recently trained individuals with little or no prior programming experience.

49. Defendants have created a cottage industry out of suing their former employees who refuse to continue participating in the scheme, extorting tens of thousands of dollars out of them.

50. When Manzano informed Defendants in late November 2022 that he would no longer continue his employment, the Company's in-house attorney Mr. Robert Adamson threatened him with a lawsuit for $34,650.00, plus interest, fees, and costs, for purported violation of the Tuition Forgiveness Agreement.

51. When Manzano informed Mr. Adamson that he would be retaining and attorney and respond to the demand within a few days, Mr. Adamson *immediately* offered a 92% discount on the demand—i.e., less than the cost

of retaining counsel to litigate a contract dispute—but gave Manzano only hours to respond.

52. This is the same illegal scheme of extortion and predatory litigation that Defendants have employed countless times before.

53. Plaintiff now asks this Court to put an end to this racket.

54. As pled below, Defendants are liable for FLSA violations even without enforcement of the Tuition Repayment Agreement.

55. If enforced, the Tuition Repayment Agreement would have the effect of bringing Manzano's wages further below the federal minimum wage of $7.25 per hour during many workweeks throughout his employment by Enhance IT.

56. If enforced, the Tuition Repayment Agreement would have the effect of bringing Manzano's federal overtime premiums further below one-and-one-half times his regular hourly rate during many workweeks throughout his employment by Enhance IT.

57. If enforced, the Tuition Repayment Agreement would not compensate Defendants for actual costs incurred in training Plaintiffs; the Agreement is therefore merely a penalty and is unenforceable.

58. Plaintiff's required 24 months of employment with Enhance IT would necessarily require his participation in a fraudulent scheme to deceive Enhance IT's clients as to the qualifications of the individuals it places with them to provide IT services.

59. Manzano is currently threatened with litigation by Defendant over his purported breach of the Tuition Forgiveness Agreement and the enforceability of the same is ripe for judicial review.

## COUNT ONE (FLSA Minimum Wage Violation)

60. At all relevant times, Plaintiff was an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

61. Throughout his entire period of training, Defendants failed to compensate Plaintiff at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

62. Plaintiff is entitled to recover his unpaid minimum wages from Defendants in an amount to be determined at trial, in accordance with 29 U.S.C. § 216(b).

63. As a result of the failure to pay minimum wages as alleged above, Plaintiff is entitled to recover liquidated damages in an amount equal to his unpaid minimum wages in accordance with 29 U.S.C. § 216(b).

64. As a result of the underpayment of minimum wages as alleged above, Plaintiff is entitled to recover from Defendants his litigation costs, including his reasonable attorney's fees, in accordance with 29 U.S.C. § 216(b).

### COUNT TWO (FLSA Overtime Violation)

65. At all relevant times, Plaintiff was an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

66. Plaintiff worked in excess of forty (40) hours during each workweek throughout his entire training period.

67. Defendants failed to pay Plaintiff an overtime premium of one-half his regular hourly rate for work in excess of forty (40) hours worked in each workweek throughout his training period.

68. Plaintiff is entitled to recover his unpaid overtime premiums from Defendants in an amount to be determined at trial, in accordance with 29 U.S.C. § 216(b).

69. Plaintiff is entitled to recover liquidated damages in an amount equal to his unpaid overtime premiums in accordance with 29 U.S.C. § 216(b).

70. As a result of the failure to pay overtime premiums as alleged above, Defendants are liable to Plaintiff for her litigation costs, including her reasonable attorney's fees in accordance with 29 U.S.C. § 216(b).

71. As a result of the late payment of overtime wages as alleged above, Plaintiff is entitled to liquidated damages in an amount equal to his unpaid overtime wages in accordance with 29 U.S.C. § 216(b).

72. As a result of the underpayment of overtime premiums as alleged above, Defendant is liable to Plaintiff for his litigation costs, including his reasonable attorney's fees, in accordance with 29 U.S.C. § 216(b).

## COUNT THREE (Declaratory Judgment - FLSA)

73. At all relevant times, Plaintiff was an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

74. " '[W]ages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.' . . . This is true whether the 'kick-back' is made in cash or in other than cash." 29 C.F.R. § 531.35.

75. "The FLSA does not permit an employer to transfer to its employees the responsibility for the expenses of carrying on an enterprise." *Dean v. 1715 Northside Drive, Inc.*, 224 F. Supp. 3d 1302, 1327 (N.D. Ga. 2016) (quotation omitted).

76. Enforcement of the Tuition Forgiveness Agreement would have the effect of "kicking back" to Defendants a large portion of the wages that Plaintiff received during his training and "on bench" periods, lowering his wages below the federal minimum wage of $7.25 per hour.

77. Enforcement of the Tuition Forgiveness Agreement would have the effect of "kicking back" to Defendants a large portion of the wages that Plaintiff received during his training and "on bench" periods, decreasing his overtime premiums earned below the federally required rate of one-and-one-half times his regular hourly rate.

78. A current, ripe, and justiciable dispute and controversy exists between and among the Parties as to the enforceability of the Tuition Forgiveness Agreement with respect to the Fair Labor Standards Act's minimum wage and maximum hour requirements, and is fully susceptible to judicial resolution.

79. It is just and appropriate that this Court declare and adjudge that enforcement of the Tuition Repayment Agreement would violate the minimum wage and maximum hours provisions of the Fair Labor Standards Act and is therefore unenforceable.

80. Because enforcement of the Tuition Forgiveness Agreement would violate the minimum wage and maximum hour guarantees of the FLSA, and because a declaratory judgment is necessary to protect Plaintiff's minimum wages and overtime premiums guaranteed by the FLSA, Defendant is liable to Plaintiff for his litigation costs, including his reasonable attorney's fees, in accordance with 29 U.S.C. § 216(b).

## COUNT FOUR (Declaratory Judgment - Penalty)

81. The Tuition Forgiveness Agreement purports to require Plaintiff to pay to Enhance IT the sum of $34,650.00 in the even that Plaintiff resigns or is terminated for cause within 24 months of the beginning of his employment by Enhance IT.

82. That amount purports to represent Enhance IT's total expenses incurred during Plaintiff's training period, specifically in his (1) training, (2) education, (3) materials used, and (4) corporate housing, and (5) relocation to Atlanta, Georgia.

83. The actual costs incurred by Enhance IT—that may be recovered by it without violating the minimum wage or maximum hours provisions of the FLSA—in training Plaintiff are not difficult or impossible to accurately estimate.

84. The Tuition Forgiveness Agreement was intended by Enhance IT to act as a penalty rather than to compensate Enhance IT for any loss it might incur as a result of Plaintiff's resignation or termination for cause in less than 24 months.

85. The sums enumerated and stipulated in the Tuition Forgiveness Agreement are not a reasonable pre-estimate of Enhance IT's probable loss in the even that Plaintiff resigned or was terminated for cause in less than 24 months.

86. The terms of the Tuition Forgiveness Agreement do not purport to bind both Plaintiff and Enhance IT.

87. A current, ripe, and justiciable dispute and controversy exists between and among the Parties as to the enforceability of the Tuition Forgiveness Agreement with respect to its status as an impermissible penalty and is fully susceptible to judicial resolution.

88. It is just and appropriate that this Court declare and adjudge that the Tuition Forgiveness Agreement constitutes an impermissible penalty and is therefore unenforceable.

89. Defendants have acted in bad faith in attempting to enforce the Tuition Forgiveness Agreement, have been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense in connection with this matter.

90. Because of Defendants' bad faith and stubborn litigiousness, Plaintiff is entitled to recover his reasonable attorney's fees and costs of litigation pursuant to O.C.G.A. § 13-6-11.

## COUNT FIVE (Declaratory Judgment - Fraud)

91. Under Georgia Law, a contract may be illegal because it is intended to effect the doing of something that is contrary to law or public policy. *See Department of Transp. v. Brooks*, 254 Ga. 303, 328 S.E.2d 705 (1985) (citing cases).

92. The Tuition Repayment Agreement purports to require Plaintiff's continued employment by Enhance IT, under penalty of a $34,650.00 fine.

93. Enhance IT is currently defrauding many if not all of its clients by grossly falsifying the résumés of the IT employees it places to work for them in

order to mislead its clients into falsely believing that the employees it places with them have necessary qualifications.

94. The Tuition Repayment Agreement is not enforceable because it is intended to effect a fraud and/or penalize Plaintiff for failure to participate in a fraud.

95. A current, ripe, and justiciable dispute and controversy exists between and among the Parties as to the enforceability of the Tuition Forgiveness Agreement with respect to its enforceability on the grounds of fraud, and is fully susceptible to judicial resolution.

96. It is just and appropriate that this Court declare and adjudge that the Tuition Repayment Agreement cannot be enforced because the consideration sought from Plaintiff—i.e., his continued employment—requires his participation in an illegal scheme to defraud the clients of Enhance IT.

97. Defendants have acted in bad faith in attempting to enforce the Tuition Forgiveness Agreement, have been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense in connection with this matter.

98. Because of Defendants' bad faith and stubborn litigiousness, Plaintiff is entitled to recover his reasonable attorney's fees and costs of litigation pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff respectfully prays that the Court:

(a) Take jurisdiction of this matter;

(b) Grant a trial by jury as to all matters properly triable to a jury;

(c) Issue a judgment declaring that Plaintiff is an employee covered by the FLSA, and that Defendants failed to comply with the minimum wage requirements of the FLSA;

(d) Issue a judgment declaring that Plaintiff is an employee covered by the FLSA, and that Defendants failed to comply with the maximum hour requirements of the FLSA;

(e) Award Plaintiff liquidated damages in amount of his unpaid minimum wages;

(f) Award Plaintiff liquidated damages in amount of his unpaid overtime premiums;

(g) Award Plaintiff nominal damages to the extent that liquidated damages are not awarded;

(h) Award Plaintiff his costs of litigation including reasonable attorney's fees pursuant to 29 U.S.C. § 216(b);

(i) Award Plaintiff his reasonable attorney's fees and costs of litigation pursuant to O.C.G.A. § 13-6-11;

(j) Issue a judgment declaring that enforcement of the Tuition Repayment Agreement would violate the minimum wage and maximum hours provisions of the Fair Labor Standards Act and is therefore unenforceable.

(k) Issue a judgment declaring that the Tuition Repayment Agreement constitutes an unenforceable penalty;

(l) Issue a judgment declaring that the Tuition Repayment Agreement is unenforceable because it requires Plaintiff's participation in an illegal scheme to defraud the clients of Enhance IT; and

(m) Award any and such other further relief this Court deems just and proper.

Respectfully submitted this 2nd day of December 2022.

**DELONG, CALDWELL, BRIDGERS, FITZPATRICK & BENJAMIN, LLC**

*s/ Matthew W. Herrington*
Charles R. Bridgers
Georgia Bar No. 080791
Matthew W. Herrington
Georgia Bar No. 275411

Attorneys for Plaintiff

101 Marietta Street NW
Suite 2650
Atlanta, GA 30303
(404) 979-3150 Telephone
(404) 979-3170 Facsimile
charlesbridgers@dcbflegal.com
matthew.herrington@dcbflegal.com